**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**T.H.,**

     **Plaintiff,**

**v.**                             **Case No.: 4:23-cv-274-AW-MAF**

**FLORIDA DEPARTMENT OF
CORRECTIONS and RICKY D. DIXON,
in his official capacity as SECRETARY
OF THE FLORIDA DEPARTMENT OF
CORRECTIONS,**

     **Defendants.**

_____/

## DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendants, the Florida Department of Corrections ("FDC") and Ricky D. Dixon, in his Official Capacity as Secretary of FDC ("Dixon"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, hereby move to dismiss Plaintiff's Complaint [Doc. 1]. In support hereof, Defendants state as follows:

### Introduction

1.     Plaintiff initiated this action on June 29, 2023. [Doc. 1].

2.     On June 23, 2023, six days prior to the initiation of this action, FDC filed suit in state circuit court seeking administrative review to challenge the Final Order at issue in the Complaint, pursuant to 20 U.S.C. §1415(i)(2)(A), 20 U.S.C.

§1415(i)(3)(A)-(C), §944.801(9), Florida Statutes, and §1003.57(1)(c), Florida Statutes. See Fla. Dep't of Corrs. v. T.H., Case 4:23-cv-00314.

3.     On August 14, 2023, the parties agreed to consolidate their respective cases. [Doc. 19].

4.      In Plaintiff's Complaint, he asserted the following causes of action against Defendants:

Count I:     Enforcement under Section 1983
Count II:    Violation of the IDEA
Count III:   ADA Interference
Count IV:    Section 504 Discrimination
Count V:     Attorneys' Fees and Costs under the IDEA, Section
             504, and the ADA

5.     These five causes of action arise from, and are subsequent, to a due process hearing ("DOAH Case") held before the Florida Division of Administrative Hearings ("DOAH") under the Individuals with Disabilities Education Act ("IDEA"). [Doc. 1 at ¶¶42-50]. The DOAH Case was styled T.H. v. Florida Department of Corrections, Case No. 22-3335E. [Doc. 1-2].

6.     In the DOAH case, on April 4, 2023, Administrative Law Judge Jessica E. Varn entered a Final Order wherein she found FDC committed procedural and substantive violations of the IDEA. As relief, ALJ Varn ordered FDC to:

1. Provide compensatory education for the period of May 2022
to April 2023; and

2

2. Within 30 days of this Final Order, conduct a comprehensive evaluation of the student, in order to design an IEP tailored to the unique needs of this student; and

3. Within 45 days of this Final Order, reconvene the IEP team, which must include behavior specialists and a mental health professional, to address all of this student's academic, emotional, and behavioral needs and consider which curriculum is appropriate for this student.

7.     Plaintiff seeks permanent injunctive relief, declaratory relief, and prevailing party attorneys' fees in relation to the DOAH Case and the instant matter.

8.     As set forth more fully in the Memorandum of Law below, Plaintiff's claims against FDC and Dixon are subject to dismissal.

WHEREFORE, Defendants FDC and Dixon respectfully request the entry of an Order dismissing Plaintiff's Complaint and granting such other relief this Court deems proper.

## MEMORANDUM OF LAW

### I.    Standards Applicable to Motions to Dismiss

Because this Court is familiar with the standards of review governing this Motion, they are not restated herein.

### II.   Plaintiff Failed to Properly Exhaust Available Administrative Remedies (Counts I-IV)

Plaintiff's claims should be dismissed due to Plaintiff's failure to exhaust his administrative remedies. Pursuant to 42 U.S.C. § 1997e(a):

3

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This requirement is mandatory. Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir.1998); Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999). Section § 1997e(a) requires the plaintiff to exhaust any available administrative remedy *before* he files suit. Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Cox v. Mayer, 332 F.3d 422, 425 (6th Cir. 2006).[1] In Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983 (2002), the United States Supreme Court held that 42 U.S.C. §1997e(a) applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Exhaustion is required whether the Plaintiff seeks declaratory and injunctive relief, monetary damages, or both. Booth v. Churner, 532 U.S. 731, 734, 121 S. Ct. 1819 (2001); Alexander, 159 F.3d at 1325. The requirement is not subject to either waiver by a court, or futility or inadequacy exceptions. Alexander, 159 F.3d at 1325; see Booth, 532 U.S. at 741 n.6.

"The [Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e,] exhaustion requirement requires full and proper exhaustion." See Woodford v. Ngo,

---

[1] The Sixth Circuit in Cox cited to Harris v. Garner, 216 F.3d 970, 973-80 (11th Cir. 2000) (en banc), "[f]or an extended explanation of why 'to bring' means 'to file,'" where the Eleventh Circuit construed the same language ("brought") in the physical injury section of § 1997e to mean "file." Cox, 332 F.3d at 424 n.1.

548 U.S. 81, 93, 126 S. Ct. 2378 (2006). Exhaustion is a *mandatory* pre-condition to filing a suit. <u>Woodford</u>, 548 U.S. at 85. Completion of the grievance exhaustion requirement means properly completing each step of the prison's grievance procedures. <u>Jones v. Bock</u>, 549 U.S. 199, 219, 127 S. Ct. 910 (2007); <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1158 (11th Cir. 2005); <u>Zolicoffer v. Scott</u>, 55 F. Supp. 2d 1372, 1375 (N.D. Ga. 1999) ("The exhaustion requirement mandates a good faith, bona fide effort to comply with [the grievance] procedures for obtaining an administrative remedy."), <u>aff'd</u>, 252 F.3d 440 (11th Cir. 2001).

The Eleventh Circuit Court of Appeal has noted that the policy reasons underlying the requirement of exhaustion are:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

<u>Alexander</u>, 159 F.3d at 1327 (quoting <u>Kobleur v. Group Hospitalization & Medical Services, Inc.</u>, 954 F.2d 705, 712 (11th Cir. 1992)).  The Eleventh Circuit has also stated that the purpose of exhaustion "is to put the [administrative authority] on notice of **<u>all issues</u>** in contention and to allow the [authority] an opportunity to

investigate those issues." <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1287 (11th Cir. 2004) (citations omitted). The purpose of filing administrative grievances, as defined by the FDC inmate grievance procedure,

> . . . is to provide an inmate with a channel for the administrative settlement of a grievance.  In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication.  This procedure will also provide a written record in the event of subsequent judicial or administrative review.

Rule 33-103.001(1), <u>Fla</u>. <u>Admin</u>. <u>Code</u>. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's procedural rules." <u>Woodford</u>, 548 U.S. at 95. "***Allowing plaintiff to proceed on his unexhausted claim would frustrate the policies behind the mandatory PLRA exhaustion requirement***." <u>Shields v. Paeplow</u>, No. 09-21818-Civ-SEITZ, 2010 WL 5419002, at *7 (S.D. Fla. Nov. 16, 2010) (report and recommendation) (citing <u>Woodford</u>, 548 U.S. at 87-94), 2010 WL 5419081 (Dec. 23, 2010) (unpublished order adopting report and recommendation) (emphasis added).

According to precedent, all claims must be exhausted prior to filing a lawsuit. <u>See</u> <u>Jones</u>, 549 U.S. at 219-24. The District Court is tasked with separating the

exhausted claims from the unexhausted claims, dismissing the unexhausted claims, and proceeding forward on only the exhausted claims.  Id.

FDC has established a grievance procedure in the Florida Administrative Code, §§ 33-103.001 to 33-103.019. Chandler, 379 F.3d at 1288. Generally, to properly exhaust administrative remedies prisoners must complete a three-step process[2] starting with an informal grievance on a DC6-236 form, followed by a formal grievance on a DC1-303 form, and completed by the submission of a grievance appeal on DC1-303 form. See Rules 33-103.005-.007, Fla. Admin. Code. The informal and formal grievances are institutional grievances, meaning they are filed at the prison the prisoner is housed at for a response by a prison staff member. Id.; Chandler, 379 F.3d at 1287-88. Exhaustion requires that all steps within the grievance process be completed before filing suit, including waiting for a response to the grievance appeal before initiating the judicial action. See e.g., Smith, 491 F. App'x at 82-83 (stating that, to complete the exhaustion requirement, the inmate was required to wait for the grievance appeal response or for the requisite appeal response time to expire before filing his § 1983 action).

---

[2] Inmates are permitted the begin at the second step of this process for claims regarding violations of the Americans with Disabilities Act. See Rule 33-103.005(1), Fla. Admin. Code. As will be described below, however, this has no effect on the analysis as applied to Plaintiff's claims.

In <u>Turner v. Burnside</u>, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit held that "a defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." <u>Id.</u> at 1082 (<u>citing</u> <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008) (holding that "instances exist-such as those involving jurisdictional issues when judges may resolve factual questions.  One such instance is when a judge must decide a motion to dismiss for failure to exhaust nonjudicial remedies.")). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense … is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" <u>Bryant</u>, 530 F.3d at 1374-1375 (<u>citing</u> <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F. 2d 365, 368-69 (9th Cir. 1988)). According to <u>Bryant</u>:

> Where exhaustion-like jurisdiction, venue, and service of process-is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.

<u>Bryant</u>, 530 F.3d at 1376.

The Court further held that deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes

the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed… If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

Id. (internal citations omitted).

Here, Plaintiff entered the custody of FDC in April of 2022. [Doc. 1 at ¶ 34]. Between that time and the filing of this action, Plaintiff has not filed any grievance at any level of the grievance procedure regarding the issues he raises about his education. [See **Exhibit A (Declaration of Ashley Stokes)** and **Exhibit B (Declaration of Christina Crews)**]. To the extent Plaintiff asserts that the Declarations of Stokes and Crews are outside the four corners of his Complaint, it can be considered as it is central to Plaintiff's claims and undisputed in terms of authenticity.[3] SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010)("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged").

Consequently, because Plaintiff did not even attempt to engage, let alone exhaust, his administrative grievance remedies, this case must be dismissed. Plaintiff

---

[3] Defendant recognizes that if matters outside the pleadings are considered through this Motion, the Court must treat the Motion as one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(d).

cannot be permitted to proceed on unexhausted claims. At this point, his deficiency with this case *cannot be cured by filing an amended complaint* because the amendment cannot "change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint." Smith, 491 F. App'x at 83.

## III.   **Plaintiff Failed to Exhaust an Additional Available Administrative Remedy in the Form of a Petition to Initiate Rulemaking**

While couching their request for relief in this purported enforcement action as seeking to enforce the letter of the ALJ's Final Order, it is clear Plaintiff seeks relief far greater than what was awarded in the form of an order for FDC to provide him with an opportunity to obtain a regular high school diploma.

To the extent Plaintiff seeks that relief, regardless of how Plaintiff would seek for it to be achieved, it would require various changes to FDC's rules under Chapter 33 of the Florida Administrative Code in order to implement, secure, and oversee such a program.[4] Further, even to the extent that Plaintiff might argue that he is seeking an exception to FDC's education rules, creating such an exception would require a change to the existing rules.

In the case of a challenge to an administrative procedure in Florida, additional administrative filings are required to challenge an agency rule by an inmate. See e.g.

---

[4] What changes would be implicated depend on the manner in which Plaintiff expects that such a change would be implemented but would require potential changes to FDC's education rules, and those regarding mail, internet, and/or computer access for certain inmates, particularly a sexual offender such as Plaintiff, at the very least.

§ 120.54, <u>Fla</u>. <u>Stat</u>. (2018). The Petition to Initiate Rule Making ("PIRM") process is a statutorily-created process which is different, separate, and distinct from the normal grievance process. The PIRM process is detailed in Florida's statutory Administrative Procedures Act which provides the following remedy to persons with standing who wish to challenge an administrative agency rule in Florida:

> Any person regulated by an agency or having substantial interest in an agency rule may petition an agency to adopt, *amend, or repeal a rule* or to provide the minimum public information required by this chapter. The petition shall specify the proposed rule and action requested. Not later than 30 calendar days following the date of filing a petition, the agency shall initiate rulemaking proceedings under this chapter, otherwise comply with the requested action, or deny the petition with a written statement of its reasons for the denial.

§ 120.54(7)(a), <u>Fla</u>. <u>Stat</u>. (2018) (emphasis added). The PIRM process is an administrative procedure which must be exhausted to challenge an Administrative Regulation promulgated by any Executive Branch Agency. The PIRM process is an administrative remedy available to any person with standing – not just prisoners – desiring to challenge an Administrative Rule in Florida. A person may challenge an Administrative Rule promulgated by any Executive Branch Agency.

The PLRA mandates that incarcerated individuals exhaust all available administrative remedies. PLRA, 42 U.S.C. § 1997e(a); <u>Ross v. Blake</u>, 578 U.S. 632, 637-641, 136 S. Ct. 1850, 1856-1858 (2016). The normal prisoner grievance process alone, <u>see</u> Rule 33-103, <u>Fla</u>. <u>Admin</u>. <u>C</u>., *et seq*., is **insufficient** to properly notice FDC of a challenge to an administrative regulation. PIRMs alert Executive Agencies

to issues with an Administrative Regulation and provides Executive Agencies with an opportunity to remedy those issues prior to the filing of a lawsuit.

Courts have consistently found that the PIRM process is available to inmates in Florida. See O'Connor v. M.L. Carnahan, et al., 3:09-cv-224, 2016 WL 8669909, *4 (N.D. Fla. Nov. 15, 2016), *Report and Recommendation Adopted by* O'Connor v. M.L. Carnahan, et al., 2017 WL 1240749 (N.D. Fla. Mar. 17, 2017). The PIRM process is "the appropriate – or at least the most appropriate – route for Plaintiff to have used to exhaust his available administrative remedies [when challenging an administrative regulation]." Id. at *4. See also Caldwell v. State, 821 So. 2d 374 (Fla. 1st DCA 2002) (addressing a situation where a Petitioner filed a PIRM and finding that the Petitioner could not challenge the denial of the PIRM, but would be entitled to file a declaratory judgment claim in **state circuit court** to invalidate the complained-of rule) (emphasis added); Quigley v. Florida Department of Corrections, 745 So. 2d 1029 (Fla. 1st DCA 1999) (dealing with the same situation as was addressed in Caldwell).

To the extent that it might be argued based on the recent ruling in Sims v. Fla. Dep't of Corr., 19-13745, 2023 WL 4858535, *4 (11th Cir. July 31, 2023) that the requirements for administrative exhaustion are limited to those found in the inmate grievance procedure, because "[n]othing in the [Department's Inmate Orientation Handbook] suggests that a prisoner must do anything beyond the three steps in

Chapter 33-103 to exhaust administrative remedies . . .prisoners need not file a rulemaking petition to be entitled to process with judicial remedies" which renders such a remedy unavailable to inmates, such an argument is not applicable here. FDC's Inmate Orientation Handbook was edited in December of 2022 to include language regarding the process of filing a petition to initiate rulemaking. [See **Exhibit C (Declaration of Kristen Lonergan at ¶13 "Inmate Orientation Handbook")**].

Accordingly, the ruling in <u>Sims</u> does not apply to Plaintiff's situation, where the deficiency highlighted by the Court there was no longer in effect at the time of Plaintiff's filing of this action in June of 2023. [Doc. 1]. Plaintiff had notice of and the opportunity to file a petition to initiate rulemaking to the extent that he is seeking relief that would require either an exception, change, or addition to FDC rules to accomplish his intended relief. Plaintiff failed to exhaust that additional administrative remedy and, therefore, the PLRA bars his claims. [See **Exhibit D (Declaration of Lauren Sanchez)**].

## IV.    Plaintiff's Claims Against Dixon are Redundant of his Claims Against FDC (All Counts)

In the Complaint, Plaintiff asserts that he is suing Dixon in his official capacity, with the only reason given being that he "has the statutory authority to implement the relief sought in this Complaint." [Doc. 1 at ¶13]. Moreover, there are no allegations in the Complaint identifying any specific individual actions taken by

Dixon. Indeed, all allegations in the Complaint are against the entity (FDC) and not against Dixon. As such, Plaintiff's claims against Dixon are redundant of his claims against FDC and should be dismissed.

Pursuant to applicable case law, in contrast to individual capacity suits, when an officer is sued in his or her official capacity, "the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991), quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985), citing Monell v. Department of Social Servs., 436 U.S. 658,690 n. 55 (1978). Because suits against an officer in his or her official capacity and direct suits against entities are functionally equivalent, there is no need to bring official capacity suits against officials because the governmental entity can be sued directly. Id. To keep both the entity and the officer sued in his official capacity as defendants is redundant. Id. See Hafer v. Melo, 502 U.S. 21, 25 (1991)("Suits against state officials in their official capacity therefore should be treated as suits against the State").

Since suits against a government official in his or her official capacity are suits directly against the entity the officer represents, "when the plaintiff has sued the entity of which the individual is an agent, there is no need to also sue the individual actor in his official capacity." Barner v. Sasser, 5:16-CV-319-WTC-GRJ, 2018 WL 5850942, at *2 (N.D. Fla. June 27, 2018) (citing Brown v. Neumann, 188 F.3d 1289,

1290 n. 1 (11th Cir. 1999)). Therefore, because Plaintiff has sued FDC, it is redundant to sue Dixon. Accordingly, the claims against Dixon should be dismissed.

## V.    Plaintiff's Complaint is an Impermissible Shotgun Pleading (All Counts)

In the event Plaintiff maintains that an action against FDC and Dixon is permissible, then his Complaint is a classic shotgun pleading that violates Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In turn, Rule 10(b) requires that Plaintiff state claims in numbered paragraphs limited as far as practicable to a single set of circumstances and each claim founded on a separate transaction or occurrence must be stated in a separate count. The upshot of the decisions decrying the use of shotgun pleadings is that a defendant is entitled to fair notice of the claims brought against it.

In a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant. Generalized allegations "lumping" multiple defendants together are insufficient to permit the defendants, or the Court, to ascertain exactly what plaintiff is claiming. See West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc., 287 Fed. Appx. 81, 86 (11th Cir. 2008)(internal citations omitted). In the instant matter, despite naming FDC and Dixon as separate Defendants [Doc. 1 at ¶¶12-18], Plaintiff made no effort to distinguish the actions or inactions of the Defendants or their alleged liability under

15

each of his five separate claims; instead, he lumped them together and simply asserted, "[r]eferences to DOC herein also refer to Dixon." [Doc. 1 at ¶12]. Plaintiff is required to specifically identify which Defendant engaged in the various acts alleged in the Complaint. His failure to do so violates Rules 8 and 10.

## VI.   42 U.S.C. §1983 Claims Premised on a Denial of Rights Conferred by the IDEA are Barred (Count I)

As this Court is aware, 42 U.S.C. §1983 creates no substantive rights but merely provides a remedy for deprivations of federal statutory and constitutional rights. Shi v. Montgomery, 679 Fed. Appx. 828, 834 (11th Cir. 2017) (internal citations omitted). Plaintiff's barebones allegations in Count I allege that Section 1983 may be utilized as a means "to enforce favorable administrative orders addressing his federal right to FAPE." [Doc. 1 at ¶76]. Section 1983 actions for denial of rights conferred by the IDEA are barred, because the IDEA's comprehensive enforcement scheme provides the sole remedy for statutory violations. See K.A. ex rel. F.A. v. Fulton County School Dist., 741 F. 3d 1195, 1210 (11th Cir. 2013). See also Sch. Bd. of Manatee Cnty., Fla. v. L.H. ex rel. D.H., 666 F. Supp. 2d 1285, 1297 (M.D. Fla. 2009)("Similarly, L.H's parents have alleged only violations of the IDEA as the basis for their § 1983 claim. Moreover, the violation of L.H.'s or the parents' rights for which they seek redress pursuant to § 1983 are subsumed by the School Board's appeal and will be determined after the Court makes a ruling on the merits of the School Board's claims. Accordingly, the parents have

failed to state a claim upon which relief can be granted. Thus, the motion to dismiss should be granted as to Count IV").

## VII.    Plaintiff Failed to State a Claim for Enforcement of the Final Order (Counts I through IV)

In Counts I through IV of the Complaint, Plaintiff demands that this Court enter permanent injunctive relief requiring FDC to comply with all provisions of the Final Order. [Doc. 1 at p. 20, Wherefore clause) including (1) the provision of compensatory education (with no date set for when such compensatory education must be completed), (2) the completion of a comprehensive evaluation within 30 days of April 4, 2023, and (3) the reconvening of an IEP team meeting within 45 days of April 4, 2023, "to address all of [Plaintiff's] academic, emotional, and behavioral needs and consider which curriculum is appropriate for [Plaintiff]." [Doc. 1 at ¶49]. Contrary to Plaintiff's suggestion, nothing in the Final Order requires FDC to "convene the IEP team to develop a legally compliant IEP by May 19, 2023." [Doc. 1 at ¶49]. Nonetheless, Plaintiff concedes that two IEP team meetings were held consistent with the Final Order – Plaintiff just disagrees with the outcome. [Doc. 1 at ¶¶56-69].

Fatal to Counts I through IV is the absence of any provision in the Final Order that includes a change in Plaintiff's placement. IDEA claims seeking to enforce a Final Order that does not include a change in placement fails to state a cause of action. DeKalb County Sch. Dist. v. J.W.M., 445 F. Supp. 2d 1371, 1376 (N.D. Ga.

17

2006) (holding, "…the issue is whether, during the pendency of the appeal, the Court should order enforcement of provisions of the ALJ's decision that do not order a change of W.M.'s placement. The Court finds that it should not").

## VIII. Plaintiff Failed to State a Claim for an Alleged Violation of the ADA and Section 504 (Counts III and IV)

A cause of action under the ADA and Section 504 requires that Plaintiff allege (1) he is disabled, (2) he is a qualified individual, and (3) he was subjected to unlawful discrimination because of his disability. Meisenhelder v. Florida Coastal Sch. of Law, Inc., 3:09-CV-0074-HES-TEM, 2010 WL 2028089, at *3 (M.D. Fla. Feb. 19, 2010), aff'd, 395 Fed. Appx. 669 (11th Cir. 2010); A.B. v. Clarke Cnty. Sch. Dist., No. 3:08-CV-041CDL, 2009 WL 902038, at *15 (M.D. Ga. Mar. 30, 2009) aff'd, 372 F. App'x 61 (11th Cir. 2010)("To make out a claim under Section 504 or the ADA, a plaintiff must show that he was subjected to intentional discrimination because of his disability"). Claims under the ADA and Section 504 in the education context further require something more than an IDEA violation for failure to provide a FAPE in the least restrictive environment…"[a] plaintiff must also demonstrate some bad faith or gross misjudgment by the school or that he was discriminated against solely because of his disability")(internal citations omitted). W.C. ex rel. Sue C. v. Cobb Cnty. Sch. Dist., 407 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 2005).

Counts III (ADA) and IV (Section 504) each allege that Plaintiff is not receiving a free appropriate public education because of FDC's alleged deliberate

failure to comply with the Final Order entered by DOAH. [Doc. 1 at ¶¶51-71, 89-112]. Yet, aside from simply asserting that FDC is intentionally and deliberately not complying with the Final Order, the Complaint does not include any allegations tantamount to bad faith or gross misjudgment. Likewise, neither Count III nor Count IV contend that FDC discriminated against Plaintiff solely because of his disability. As such, Counts III and IV should be dismissed.

## IX.    Plaintiff Improperly Raised a Claim for Attorney's Fees (Count V)

Count V purports to state a cause of action for attorney's fees and costs in relation to the DOAH Case. By setting forth a claim for attorneys' fees in a pleading rather than a motion, Plaintiff did not employ the correct procedural avenue for an award of attorney's fees. See Sch. Bd. of Broward County, Florida v. C.B., 315 F. Supp. 3d 1312, 1325 (S.D. Fla. 2018) (holding, "[p]laintiff argues that Defendant may not request attorneys' fees in a pleading, but instead must make a separate motion for attorneys' fees under the IDEA….[a]s Defendant has not filed a motion for attorneys' fees, judgment in favor of Plaintiff is granted on this counterclaim."). See also Sch. Bd. of Manatee County, Fla., 666 F. Supp. 2d at 1288.

Moreover, Plaintiff and FDC have agreed to consolidate their respective cases, including FDC's challenge to the Final Order, since the cases "arise from the same [IDEA] due process hearing." [Doc. 19]. Therefore, if Plaintiff is successful on the substantive claims regarding FDC's challenge to the Final Order, he may seek

to recover his attorney's fees through a proper motion. Thus, dismissal of Count V is appropriate. <u>See</u> <u>DeKalb</u>, 445 F. Supp. 2d at 1378–79 ("the Court grants DCSD's motion to dismiss count five of W.M.'s amended counterclaim. Should W.M. seek to recover his attorneys' fees and costs, he may file a motion for same after disposition of the parties' substantive claims, in accordance with Rule 54(d)(2)"); <u>See also</u> <u>Fulton Cnty. Sch. Dist. v. S.C. by & through E.C.</u>, 1:07-CV-01907-MHS, 2008 WL 11417083, at *5 (N.D. Ga. Apr. 30, 2008)("Because it will only be possible to determine whether, and to what extent, S.C. is the prevailing party once the substantive claims regarding the manifestation determination are resolved, the Court dismisses without prejudice S.C.'s claim for attorneys fees").

Dated this 15th day of August, 2023.

Respectfully submitted,

*/s/ Amy J. Pitsch*
**AMY J. PITSCH**
Florida Bar No.: 0338280
E-mail: apitsch@sniffenlaw.com
/s/ *Terry J. Harmon*
**TERRY J. HARMON**
Florida Bar Number: 0029001
tharmon@sniffenlaw.com
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for Defendants*

## CERTIFICATION OF WORD COUNT

The undersigned certifies on this 15th day of August 2023 that this document complies with word limits set forth in Rule 7.1(F), N.D. Fla. Loc. R., and contains 4,850 words which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

/s/ *Amy J. Pitsch*
**Amy J. Pitsch**
/s/ *Terry J. Harmon*
**Terry J. Harmon**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 15th day of August, 2023, a true and correct copy of the foregoing was electronically filed in the US District Court, Northern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Amy J. Pitsch*
**Amy J. Pitsch**
/s/ *Terry J. Harmon*
**Terry J. Harmon**